94 N.J. Super. 78 (1967)
226 A.2d 760
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ABRAHAM KABAYAMA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Morris County Court, Law Division.
Decided February 7, 1967.
*79 Mr. Lewis Stein for defendant-appellant (Messrs. Salny and Stein, attorneys).
Mr. Donald DelMonte, Assistant Prosecutor (Mr. Frank Scerbo, Morris County Prosecutor, attorney), and Mr. Stephen Skillman, Deputy Attorney General, for plaintiff-respondent (Mr. Arthur J. Sills, Attorney General, attorney).
COLLINS, J.C.C.
The stipulated facts of this case are as follows. On July 23, 1966, between the hours of 8 and 11 P.M., the Mendham Township Police Department conducted a motor vehicle check on Route 24, Mendham Township, Morris County, at the intersection of Tingley Road. 731 motor vehicles were stopped. Six police officers participated *80 in the check, which involved the interception of traffic in both directions. Each officer was directed to stop one vehicle at a time, without delay, and as each vehicle was released a subsequent vehicle was stopped. At approximately 8:30 P.M. defendant was travelling with his wife, a passenger in the front right seat, to a church affair in Morristown, when he was stopped by Officer Newell, who requested his license and registration. While defendant was looking for the license and registration the police officer made a routine examination of the car by walking around the outside, front and back, and scanning the inside of the car with a searchlight through the window. When defendant could not produce the registration after looking for it for ten minutes, Officer Newell issued a summons for violation of R.S. 39:3-29, for failure to have his registration in his possession. Defendant was found guilty on August 22, 1966 in the Mendham Township Municipal Court and was fined $3 and $2 costs.
The sole question presented is whether the establishment of roadblocks by the police to stop all motor vehicles passing a certain locale in order to make routine checks for licenses and registrations constitutes an illegal invasion of privacy, contrary to the provisions of the Fourth Amendment of the Constitution of the United States and Article I, paragraph 7 of the New Jersey Constitution (1947).
The establishment of roadblocks such as the one in this case is done in order to give effect to R.S. 39:3-29 which provides:
"The driver's license and the registration certificate of a motor vehicle shall be in the possession of the driver or operator at all times when he is in charge of a motor vehicle on the highways of this state.
The driver or operator shall exhibit his driver's license, and the holder of a registration certificate or the operator or driver of a motor vehicle for which a registration certificate has been issued, whether or not the holder, driver or operator is a resident of this state, shall also exhibit the registration certificate, when requested so to do by any motor vehicle inspector, police officer or magistrate, while in the performance of the duties of his office and shall write his name in the presence of the officer, so that the officer may thereby *81 determine the identity of the licensee and at the same time determine the correctness of the registration certificate, as it relates to the registration number and number plates of the motor vehicle for which it was issued.
Any person violating this section shall be subject to a fine not exceeding one hundred dollars."
This case presents a question of first impression in New Jersey. However, this situation has been dealt with outside the State.
In City of Miami v. Aronovitz, 114 So.2d 784 (Fla. Sup. Ct. 1959), defendant sought to enjoin a municipality from operating roadblocks for the purpose of checking automobile drivers' licenses. On appeal from a temporary restraint the Florida Supreme Court held that the municipal police department could operate a roadblock to check automobile driver's licenses, and such practice did not amount to an illegal search and seizure contrary to the state and federal constitutions, nor did it amount to an unreasonable invasion of a motorist's constitutional right to use the public ways.
The Court of Appeals of Kentucky reached the same conclusion in Commonwealth v. Mitchell, 355 S.W.2d 686 (1962). And the recent case of Mincy v. District of Columbia, 218 A.2d 507 (D.C. Ct. App. 1966), which cited both Aronovitz and Mitchell cases, held that a routine spot-check of a motorist to ascertain if he has complied with the requirement of possession of a permit is neither unreasonable nor invalid, provided such check is not used as a substitute for a search for evidence of some possible crime unrelated to possession of a driver's permit. In the case here under consideration, no intimation of such purpose is made.
Both Aronovitz and Mitchell begin with the premise that driving an automobile is not a right but a privilege, subject to reasonable regulation and supervision under the police powers of the state. This has long been the position of New Jersey courts as well. See Garford Trucking, Inc. v. Hoffman, 114 N.J.L. 522 (Sup. Ct. 1935).
The States of Florida and Kentucky, as well as the District of Columbia, all have statutes similar to our own, requiring *82 drivers to have their driver's licenses in their immediate possession while driving. The fact that our statute also requires drivers to have the registration of the vehicle in their immediate possession does not distinguish the statutes substantively.
It is contended by the State that roadblocks are the only effective means for enforcement of such statutes. It further contends that such road checks are a reasonable exercise of police power granted the states, aimed ultimately at the orderly control of traffic and the prevention of traffic injuries and fatalities by apprehending and eliminating drivers whose licenses have been revoked or suspended because of prior traffic offenses, as well as drivers without licenses and drivers whose automobiles are not properly registered.
This court agrees that reasonable regulation and supervision of automobile drivers is not only permissible but necessary in order to give effect to the afore-mentioned statute. The rationale is perhaps best stated by the Supreme Court of Florida in the Aronovitz case.
"When a license is revoked or suspended it is of major importance that the operator so restricted be prevented from driving an automobile during the penalty period. This is so because otherwise the restriction would be meaningless. Even more important, operators who have been proven to be negligent, incompetent and a public hazard would be in a position to continue operating motor vehicles without fear of apprehension or restraint in the absence of some reasonable inspection system." (114 So.2d., at pp. 787-788)
Defendant contends that his right of privacy was interfered with and that such right is protected under the Fourth Amendment of the United States Constitution as defined by Griswold v. State of Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965). Conceding that such right is so protected, it cannot be said that the situation or the right protected in Griswold is analogous to this case. It must again be emphasized that we are dealing here not with a guaranteed right under an organic document but rather with a privilege bestowed by the State of New Jersey *83 upon those of its citizens who have fulfilled certain requirements. See N.J.S. 39:3-3 to 39:3-42.
In the Mitchell case, supra, the court weighs the right of the individual against the right of the public to be protected from irresponsible automobile drivers and states:
"While personal rights of freedom of movement will certainly not be lightly regarded, there must always be a balancing of private right against public interests and welfare. There must always be a logical appreciation of the demands of public safety to which an individual's personal liberties must yield when such yielding is not of an inalienable right or one that is vital but is merely an inconvenience." (355 S.W.2d, at p. 688)
The inconvenience here is not unreasonable when viewed in light of the necessity to protect the general public against unfit or irresponsible drivers. This method of checking licenses and registrations is merely for the purpose of enforcing a section of our Motor Vehicle Act, i.e., R.S. 39:3-29. It is not the purpose of such roadblocks to seek evidence for crimes unrelated to the possession of driver's licenses or motor vehicle registrations, and this opinion does not purport to decide any possible constitutional questions which could arise from such a situation.
This court, therefore, holds only that the use of periodic roadblocks for the sole purpose of checking compliance with R.S. 39:3-29 is a reasonable exercise of the police power of the State of New Jersey and does not violate an automobile driver's constitutional right of privacy under either the New Jersey or the United States Constitutions. Since defendant has admitted his failure to have the registration in his possession when stopped by the police roadblock, this court finds him guilty and fines him $3, which was the fine in the municipal court, plus municipal and county court costs.