139 N.J. Super. 28 (1976)
351 A.2d 813
STATE OF NEW JERSEY, PLAINTIFF,
v.
JUAN NUNEZ, DEFENDANT.
Superior Court of New Jersey, Bergen County Court, Law Division (Criminal).
January 15, 1976.
*29 Mr. Philip Fenster for defendant.
Mr. Mark Treacy, Assistant Prosecutor for the State (Mr. Joseph Woodcock, Prosecutor of Bergen County, attorney).
SCHIAFFO, J.C.C.
On September 29, 1975, at 1:40 A.M., Trooper Edward Boyd of the New Jersey State Police was detailed to the eastbound lane of Interstate 80 in Saddle Brook to investigate a motor vehicle accident. Upon arriving at the scene the trooper observed an automobile against the concrete center divider. The automobile had extensive damage to its front end. The trooper also saw two men outside the car sitting on the curb in the center of the roadway. He attempted to interview both men, but it appeared that neither man was able to understand English. Boyd finally ascertained that Juan Nunez, a resident of New York State, was the driver of the vehicle and detecting a strong odor of alcohol on Nunez, he took him to the Hackensack barracks for a breath test to determine the amount of alcohol in his blood. At the barracks Boyd was unable to communicate with Nunez, but was able to direct Nunez to take the breathalyzer *30 test by using motions. Although Nunez appeared not to understand the trooper, Boyd read to Nunez his right to have an independent test performed by a person of his choice. Defendant moves that the evidence obtained by the police breath test be suppressed, because Nunez did not understand his N.J.S.A. 39:4-50.2 right to have an independent test performed.
It is a well established principle of law that driving a motor vehicle on the highways of the State is a privilege, not a right, and that the State may enact reasonable laws with which automobile drivers must comply. State v. Jones, 122 N.J. Super. 585 (Cty. Ct. 1973); State v. Kabayama, 94 N.J. Super. 78 (Cty. Ct. 1967); Garford Trucking Inc. v. Hoffman, 114 N.J.L. 522 (Sup. Ct. 1935). "The operation of a motor vehicle while under the influence of intoxicating liquor * * * involves extraordinary danger of injury to the driver or other members of the public * * *." State v. Gillespie, 100 N.J. Super. 71, 75 (App. Div. 1968). To protect its citizens from the danger of those who would drive while influenced by the consumption of alcohol, the State has adopted N.J.S.A. 39:4-50. This statute provides penalties for operating a motor vehicle while under the influence of or impaired by alcohol. To effectuate N.J.S.A. 39:4-50, the Legislature has enacted N.J.S.A. 39: 4-50.2(a) which states:
(a) Any person who operates a motor vehicle on any public road, street or highway or quasi-public area in this State shall be deemed to have given his consent to the taking of samples of his breath for the purpose of making chemical tests to determine the content of alcohol in his blood; provided, however, that the taking of samples is made in accordance with the provisions of this act and at the request of a police officer who has reasonable grounds to believe that such person has been operating a motor vehicle in violation of the provisions of section 39:4-50 of the Revised Statutes.
(b) A record of the taking of any such sample, disclosing the date and time thereof, as well as the result of any chemical test, shall be made and a copy thereof, upon his request, shall be furnished or made available to the person so tested.
*31 (c) In addition to the samples taken and tests made at the direction of a police officer hereunder, the person tested shall be permitted to have such samples taken and chemical tests of his breath, urine or blood made by a person or physician of his own selection.
(d) The police officer shall inform the person tested of his rights under subsections (b) and (c) of this section.
(e) No chemical test, as provided in this section, or specimen necessary thereto, may be made or taken forcibly and against physical resistance thereto by the defendant.
This statute expressly provides that anyone driving on the highways of New Jersey has given his implied consent to submit to a breathalyzer test to determine whether he is driving in violation of N.J.S.A. 39:4-50. State v. Tolbert, 100 N.J. Super. 350 (Cty. Ct. 1968); State v. Macuk, 57 N.J. 1 (1970).
Subsections (c) and (d) of N.J.S.A. 39:4-50.2 further provide that the police officer administering the breath test shall inform the person tested of his right to have a breath sample and test performed by a person or physician of his own choosing. In the present case the police officer read the following statement to Nunez which related these statutory rights to him.
I have reason to believe you operated a motor vehicle in violation of the New Jersey Drinking Driving Law. Therefore, I wish to inform you that:
1. You are under arrest for a violation of the Drinking Driving Statute 39:4-50. 2. You are required by Statute 39:4-50 to take a breath test to determine the quantity of alcohol in your system. 3. A copy of the test results will be given to you upon request. 4. You have no legal right to consult an attorney, a physician, or anyone else before you take the test. 5. After you take the test, you may have a person or physician of your own choice take samples of your breath, blood, or urine. 6. If you refuse to submit to the test, a report will be forwarded to the Director of Motor Vehicles. 7. If the Director of Motor Vehicles finds you have refused to take the test in violation of Statute 39:4-50.2, your driving privilege will be suspended for six (6) months. 8. This six (6) month suspension will be in addition to any court conviction under the Drinking Driving Law.
Defendant, whose native language is Spanish, asserts that he does not understand English and consequently was unaware *32 that he could have an independent breath test performed. Trooper Boyd corroborated Nunez's assertion that he is unable to comprehend English. The officer reported that Nunez "did not speak or understand American," (an apparent assumption by Boyd) although the officer was able to elicit from the defendant that he had been to a party. Boyd felt that Nunez apparently understood that he had to submit to a breath test. Defendant contends that because he does not understand English, the officer's reading of the statutory right did not inform him of the right to have an independent test performed. It is defendant's belief that because of his failure to understand, the evidence of the police breath test should be suppressed. He argues that the case is similar to Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), which held that evidence of admission by a defendant, obtained while defendant was in police custody, resulting from an interrogation by a police officer without the prerequisite warning and waiver of rights, could not be introduced into evidence. In State v. Melvin, 65 N.J. 1, 11 (1974), the court, in writing about a defendant's waiver of his rights guaranteed by Miranda, stated, "The defendant may waive these rights provided the waiver is made voluntarily, knowingly and intelligently." Nunez asserts that he did not understand that he had that right. Defendant's contention is without merit. Miranda, supra involved a constitutional right. Here the right to an independent test is not a constitutional guarantee, but a statutory right. In Macuk, supra, the court found that the taking of blood from a defendant for the purpose of determining the alcohol present in the blood did not violate a constitutional safeguard. Tolbert, supra. Ohio has a statute which is similar to N.J.S.A. 39:4-50.2. The Ohio law, R.C. 4511.19 (B) reads as follows:
If there was at that time a concentration of fifteen hundredths of one per cent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of alcohol.
*33 Upon the request of the person who was tested, the results of such test shall be made available to him, his attorney, or agent, immediately upon the completion of the test analysis.
The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a police officer, and shall be so advised. (emphasis added) The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test or tests taken at the direction of a police officer.
In State v. Myers, 26 Ohio St.2d 190, 271 N.E.2d 245 (Sup. Ct. 1971), where a defendant sought to have evidence of a breathalyzer test suppressed because he was not informed of his right to have an independent test performed, the court held that it was not confronted with a constitutional question.
The right to have an independent test performed is a statutory right, not a constitutional one. N.J.S.A. 39:4-50.2(d) states that a "police officer shall inform the person tested of his rights" to an independent test. Does the word "shall" mandate that the evidence should be suppressed if the person tested is not informed of his N.J.S.A. 39:4-50.2(c) right to an independent test? Clearly, the answer must be no. In State v. Hudes, 128 N.J. Super. 589 (Cty. Ct. 1974), the police recorded the results of a breathalyzer test on forms that were not sequentially numbered. N.J.S.A. 39:4-50.3 dictates that reports "shall be sequentially numbered." The court permitted the use of the reports, stating (at 604) that "the omission of the forms being sequentially numbered [did] not appear to deny [the] defendant a fair and impartial test * * * There has been no showing of prejudice and there is no statutory right conferred which would warrant suppression of test results in all such examinations."
In the present case Trooper Boyd did read to defendant a statement which stated that defendant had the right to have an independent breath test performed. N.J.S.A. 39:4-50.2(d) states that the police officer "shall inform" the person *34 tested of this right. "Inform" has been defined as "to give information to impart knowledge." Webster's Int'l Dictionary (3 ed. 1963). Trooper Boyd did give the information to Nunez.
Absent a valid constitutional argument, the evidence obtained by a breath test should not be excluded because Nunez did not understand his statutory right to have an independent test performed by a person of his choosing after he had been informed of his right. All operators of motor vehicles give their implied consent to submit to breathalyzer tests. N.J.S.A. 39:4-50.2. To find that this consent can be negated by a defendant's claim that he did not understand his statutory right to have an independent test performed would defeat the purpose of the statute. Where the State has granted an individual the privilege of driving on its highways, the burden must be on the individual to understand the laws and regulations in furtherance of that privilege. In Myers, supra 271 N.E.2d at 250, the Ohio court stated that "in the absence of a showing of prejudice having accrued to a defendant by the failure to advise him of his right to have an independent test made * * * the results of a chemical test so administered may not be excluded from evidence." In the instant case the officer did all that he was required to do under the statute. Nunez has a valid New York driving license. N.J.S.A. 39:3-17 permits out-of-state residents who have obtained valid licenses from their own states to drive on New Jersey's roadways. While driving in New Jersey these out-of-state drivers are subject to New Jersey's motor vehicle rules and regulations. In this State the only legal requirement is to read to the driver in English his right to have an independent breath test performed by a person of his own choosing.
Public policy also dictates against finding for defendant. N.J.S.A. 39:4-50.2 was enacted to protect the public from those who would operate their vehicles while influenced by alcohol. In weighing the right of the public to be safe from intoxicated drivers against the statutory *35 right of defendant in this case, the court finds that the public interest is paramount. In Camden and Amboy R.R. v. Briggs, 22 N.J.L. 623, 644 (E. & A. 1850), the court stated that statutes "intended for the public benefit are to be taken most strongly against the persons * * * claiming rights or power under them, and most favorably for the public." In Kabayama, supra at 94 N.J. Super. 83, the court, citing Commonwealth v. Mitchell, 355 S.W.2d 686 (Ky. Ct. App. 1962) stated
* * * [T]here must always be a balancing of private right against public interests and welfare. There must always be a logical appreciation of the demands of public safety to which an individual's personal liberties must yield when such yielding is not of an inalienable right * * *
The court finds that when a police officer administering a breathalyzer test to an out-of-state driver, who operated his vehicle on New Jersey's highways, informs the driver of his right to have a person of his choice administer an independent test, the results of the police test will be admitted into evidence even if the defendant did not understand this right because of his inability to understand English. Defendant's motion is denied.