288 N.J. Super. 41 (1996)
671 A.2d 1064
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
STEVEN KADONSKY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 30, 1996.
Decided February 29, 1996.
*42 Before Judges MICHELS, BAIME, and KIMMELMAN.
Alan Dexter Bowman argued the cause for appellant (Brown and Brown, attorneys; Raymond A. Brown, on the brief).
Gerard C. Sims, Jr., Deputy Attorney General, argued the cause for respondent (Deborah T. Poritz, Attorney General, attorney; Mr. Sims, on the brief).
The opinion of the court was delivered by KIMMELMAN, J.A.D. (temporarily assigned).
*43 Defendant Steven Kadonsky appeals from his unconditional plea of guilty, entered pursuant to a plea bargain agreement, to N.J.S.A. 2C:35-3, the so-called "drug kingpin" statute. As required by the sentencing provision of that statute, the trial court sentenced defendant to life imprisonment with a twenty-five-year period of parole ineligibility. Sentences imposed on the other related charges and upon a related indictment were all directed to be concurrent to the main sentence. Defendant was also fined $500,000 and assessed the standard statutory penalties.
Defendant seeks a reversal of his conviction and sentence on the following grounds set forth in his brief:
POINT I. THE SANCTION PROVIDED WITHIN 2C:25-3 IF APPLIED TO A MARIJUANA TRAFFICKER IS VIOLATIVE OF THE EIGHTH AMENDMENT PROSCRIPTION AGAINST DISPROPORTIONATE PUNISHMENT.
i. THE STATUTE.
ii. THE STATUTE WAS NOT INTENDED TO ENCOMPASS MARIJUANA TRAFFICKING OF THE SORT AT ISSUE HEREIN.
iii. THE STATUTE VIOLATES THE PRINCIPLE OF PROPORTIONALITY IF APPLIED TO MARIJUANA IN UNSPECIFIED AMOUNTS AND WITHOUT REGARD TO WHETHER ACTIVITIES WERE STRICTLY UNCONSUMMATED AND CONSPIRATORIAL.
POINT II. THE TRIAL COURT ERRED IN RELIEVING THE STATE OF ITS BURDEN OF DEMONSTRATING THE REASONABLENESS OF THE WARRANTLESS SEARCH.
POINT III. APPELLANT WAS DENIED DUE PROCESS BY VIRTUE OF THE COURT'S ACCEPTANCE OF A GUILTY PLEA ABSENT AN ADEQUATE FACTUAL BASIS (Not Raised Below).
Although it would appear that defendant has waived his rights to challenge the statute and his sentence by virtue of his unconditional guilty plea, R. 3:9-3(f), we have nevertheless considered these contentions, the record, and all of the supporting arguments and find they are without merit and require only the discussion that follows. R. 2:11-3(e)(2).
*44 The "drug kingpin" statute, N.J.S.A. 2C:35-3, was found to be constitutional and not impermissibly vague in State v. Afanador, 134 N.J. 162, 631 A.2d 946 (1993).
N.J.S.A. 2C:35-3 provides in pertinent part:
A person is a leader of a narcotics trafficking network if he conspires with others as an organizer, supervisor, financier or manager, to engage for profit in a scheme or course of conduct to unlawfully manufacture, distribute, dispense, bring into or transport in this State methamphetamine, lysergic acid diethylamide, phencyclidine or any controlled dangerous substance classified in Schedule I or II, or any controlled substance analog thereof. Leader of narcotics trafficking network is a crime of the first degree and upon conviction thereof, except as may be provided by N.J.S. 2C:35-12, a person shall be sentenced to an ordinary term of life imprisonment during which the person must serve 25 years before being eligible for parole. Notwithstanding the provisions of subsection a. of N.J.S. 2C:43-3, the court may also impose a fine not to exceed $500,000.00.
........
....
It shall not be necessary in any prosecution under this section for the State to prove that any intended profit was actually realized. The trier of fact may infer that particular scheme or course of conduct was undertaken for profit from all of the attendant circumstances, including but not limited to the number of persons involved in the scheme or course of conduct, the actor's net worth and his expenditures in relation to his legitimate sources of income, the amount or purity of the specified controlled dangerous substance or controlled substance analog involved, or the amount of cash or currency involved.
The State's sentencing memorandum sets forth the factual background as follows:
In February of 1992, as a result of an ongoing narcotics investigation, a search warrant was executed at a warehouse in Piscataway. Property and contraband were found at that location which are used in the indoor cultivation of marijuana. As a result of arrests made that day, detectives discovered an enormous amount of marijuana in a "safehouse", operated by defendant and his employees, where marijuana was vacuum-packed in large plastic jars for re-sale. Detectives also located an overwhelming amount of records and documents, including numerous sets of fictitious identification. These records detailed the large amounts of marijuana, sold in cases at a price of $2,000 per case, the operational expenses of the indoor grow, as well as salaries and Christmas bonuses for its employees. Detectives also found bank accounts, mailbox drops, telephone services, trucking and real estate rentals, and supply store accounts set up under false names and fictitious corporations. Information supplied by co-defendants, as well as this extensive paper trial [sic], confirmed defendant's involvement as Leader of this criminal enterprise.
*45 Defendant contends that while the statutorily required mandatory sentence of life imprisonment with a twenty-five-year period of parole ineligibility is constitutional when cocaine and heroin are involved, that punishment constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution when the drug involved is marijuana. Hence, defendant seeks to withdraw his guilty plea.
According to the wording of the "drug kingpin" statute, a person is a leader of a narcotics trafficking network if he conspires with others as an organizer, supervisor, financier or manager to engage for profit in a scheme unlawfully to manufacture, distribute or dispense any controlled dangerous substance classified in Schedule I. N.J.S.A. 24:21-5, entitled "Schedule I," specifically lists "Marihuana" as a controlled dangerous substance.
Defendant argues that marijuana does not pose the risk to society as does heroin or cocaine and "there is no basis upon which it may be urged that the Legislature intended to classify it coequally with those substances for `leader' liability purposes." In effect, we are urged to hold that marijuana should not be considered in the same league as heroin or cocaine when it comes to punishment under the "drug kingpin" statute. Unfortunately, defendant's argument misses the point of the statute. The Legislature had sufficient justification to classify marijuana in the same league with heroin and cocaine because the thrust of the statute is to curb the operation of a drug trafficking network. The legislative objective and the gravity of the penalty to be imposed is not made to depend upon the identity of the particular controlled dangerous substance involved in the operation. Defendant's attempt to draw a distinction between marijuana and heroin and cocaine is irrelevant to the criminal conduct the Legislature sought to be interdicted. Accordingly, defendant's sentence does not constitute cruel and unusual punishment simply because marijuana was the commodity of the drug trafficking network.
A hearing on defendant's motion to suppress was not afforded. R. 3:5-7(c) provides that a hearing on a motion to *46 suppress need be held only if material facts are disputed. Apart from the conclusory assertion that an illegal search had occurred and that the evidence seized should be suppressed, defendant put no facts on record to support his assertion. It is not disputed that defendant's wife, Carol Kadonsky, gave permission for their house to be searched. As indicated on the consent form, Mrs. Kadonsky was fully advised of her rights to refuse permission in the absence of a search warrant. Nevertheless, she signed the consent form. She did not contend there was any legal deficiency in her consent to the search by executing an appropriate affidavit or certification in support of her husband's motion to suppress. In the absence of factual allegations to support the claim that the search and seizure were illegal, a hearing was not required and the motion to suppress was properly denied.
When defendant entered his guilty plea pursuant to the plea bargain agreement, he executed the required form admitting that he was a leader of a narcotics trafficking network. Beyond that, the court elicited from defendant facts sufficient to form a basis for the acceptance of his guilty plea. Defendant now denies that he ever admitted to being a leader or that he occupied the role of a high-level position within the narcotics trafficking network in question.
Defendant admitted to working with David Weinstein, his brother George Kadonsky, a "Mr. Miller", Deborah Ysagguire, and other employees of the operation.
He said: "I helped Dave Weinstein put together the operation ... [for] growing marijuana for sale."
Defendant admitted he "cooperated with Mr. Weinstein in, in setting up the facility." Defendant "helped design the operations... [and d]esign the facility, design how everything should work with the electrical and the plumbing and everything."
He admitted to renting "a facility in Hillsborough for the purpose of perpetuating this particular organization."
The following colloquy also took place:

*47 PROSECUTOR: ... Mr. Kadonsky, was Mr. Miller subordinate to you in status in this organization? Was he a worker in this particular warehouse?
MR. KADONSKY: Mr. Miller was a worker. The direct chain of command was all the employees were supervised and got their instructions from Mr. Weinstein. They would have taken instructions from me  okay. Yes.

THE COURT: Yes what?
MR. KADONSKY: My brother would take instructions from me. He would clear things with me.
....
THE COURT: And would you share in the profits if there were any with David Weinstein?
MR. KADONSKY: I was to share in the profits if there are [sic] were anything, yes.
THE COURT: Was there anyone that would share in the profits between you and Mr. Weinstein that you're aware of?
MR. KADONSKY: There may have been. I don't know.
THE COURT: That you're aware of?
MR. KADONSKY: No.
THE COURT: So as far as you know, the only people who shared in the profits were you and David Weinstein?
MR. KADONSKY: Yes.
[Emphasis added.]
Defendant was asked: "Mr. Kadonsky, would you agree that the group of people constituting people such as Mr. Miller, Miss Ysagguire, constituted a structured organization or system engaged in the manufacture and distribution of illegal drugs?" He answered, "Yes."
Defendant was asked: "There is no question that this organization was engaged in the manufacture or distribution of marijuana?" He answered, "Yes."
Defendant was asked: "And was the purpose of the growing of the marijuana to accumulate sufficient quantity to distribute it to others? Was that your intent?" He answered, "Yes."
Significantly, the following question and answer also took place:
THE COURT: Let me just say to you Mr. Kadonsky, that the statute, that the case [State v. Alexander, 264 N.J. Super. 102, 624 A.2d 48 (App.Div. 1993), aff'd, 136 N.J. 563, 643 A.2d 996 (1994)] says an upper echelon member is defined as someone who stands on an upper level of the chain of command of a drug trafficking network exercising command authority over members of that organization whose status is subordinate to his. An upper level is a level which is superior to street level distributors and to their immediate supervisors and suppliers. That's what the statute, the case says.

*48 MR. KADONSKY: I was involved in a conspiracy with David Weinstein where he was in  he managed and operated the facility, so from that standpoint he would ask me questions from time to time as to the operations, so from that standpoint, yes.

[Emphasis added.]
In light of such factual admissions, it is incomprehensible to fathom how defendant can now argue that there was an inadequate basis for the acceptance of his plea and that the conspiracy with which he was charged was not consummated. The factual basis for the acceptance of the plea is amply contained in the excerpts from the transcripts of court proceedings set forth above. As for the conspiracy charge, the factual admissions by defendant as above noted are replete with overt acts. See State v. Moretti, 52 N.J. 182, 186, 244 A.2d 499, cert. denied, 393 U.S. 952, 89 S.Ct. 376, 21 L.Ed.2d 363 (1968); State v. Dennis, 43 N.J. 418, 423, 204 A.2d 868 (1964).
Accordingly, defendant's conviction and sentence are affirmed.