# Illinois Official Reports

## Appellate Court

---

### *People v. Fernandez*, 2014 IL App (1st) 120508

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LUIS FERNANDEZ, Defendant-Appellant. |
| District & No. | First District, Fourth Division<br>Docket No. 1-12-0508 |
| Filed<br>Rehearing denied | July 17, 2014<br>August 7, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's conviction for unlawful delivery of cocaine and sentence to life in prison without parole were upheld on appeal, since, even if defendant had not forfeited his claim that his prior federal conviction could not serve as a predicate offense for purposes of the Habitual Criminal Act, the claim would have been rejected on the ground that his prior conviction clearly qualified as a predicate offense under the plain language of the Act, his counsel was not ineffective in failing to object to the use of the prior offense as a predicate offense under the Act, and the application of the Act in defendant's case did not violate the eighth amendment of the United States Constitution or the proportionate penalties clause of the Illinois Constitution. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-16176 (02); the Hon. Arthur F. Hill, Jr., Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, David C. Holland, and Patrick F. Cassidy, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Assistant State's Attorney, of counsel), for the People.

Panel

JUSTICE EPSTEIN delivered the judgment of the court, with opinion. Presiding Justice Howse and Justice Lavin concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant Luis Fernandez sold 1,008.5 grams–approximately two pounds–of cocaine to an undercover police officer in 2010. For that amount of cocaine, defendant would have ordinarily faced a sentence of between 15 and 60 years' incarceration. 720 ILCS 570/401(a)(2)(D) (West 2010). In this case, because defendant had pled guilty to drug offenses in 1992 and 1999, the Habitual Criminal Act (Act) required the trial court to sentence defendant to spend the rest of his life in prison. 730 ILCS 5/5-4.5-95(a) (West 2010). The trial court noted, "It gives me no pleasure to do this," in sentencing defendant to the harshest penalty under Illinois law.

¶ 2    Defendant raises three issues on appeal: (1) his 1999 federal conviction cannot serve as a qualifying offense under the Act, because it did not have the same elements as a Class X offense; (2) the Act violates the eighth amendment to the United States Constitution; and (3) the Act, as applied, violates the proportionate penalties clause of the Illinois Constitution. Although defendant's natural life sentence is harsh, we are compelled to affirm it.

¶ 3                                   I. BACKGROUND

¶ 4    On August 3, 2010, undercover Illinois State Police special agent Gutierrez met defendant, codefendant Daniel Quispe, and an informant at a restaurant in Chicago, Illinois. There, defendant and codefendant agreed to sell three kilograms of cocaine to Gutierrez for $31,500 per kilogram. The following day, defendant told Gutierrez via telephone that he could obtain only one kilogram. On August 5, 2010, Gutierrez–equipped with a surreptitious recording device and $31,500 in prerecorded bills–met codefendant in a restaurant parking lot, but moved to the corner of Armitage Avenue and Rockwell Street, because codefendant was nervous. Codefendant entered Gutierrez's truck, made a telephone call, and said that defendant would be there shortly. Defendant arrived approximately 15 minutes later, entered the truck, and handed Gutierrez a black plastic bag containing 1,008.5 grams of cocaine. Gutierrez opened a toolbox containing the money, a signal to his surveillance team that a deal had been made. As the surveillance team approached, defendant and codefendant attempted to flee, but were soon arrested. That night at the police station, defendant told Gutierrez that codefendant paid him $500 to deliver the cocaine. A jury found defendant guilty of delivery of a controlled substance.

¶ 5    At sentencing, the State presented a certified copy of defendant's 1992 conviction for delivery of more than 400 grams but less than 900 grams of cocaine. With respect to that 1992 conviction, a retired Chicago police officer testified that, on October 29, 1991, defendant sold him cocaine while the officer was undercover. The State also presented a certified copy of defendant's 1999 federal conviction for possession with intent to deliver. With respect to the 1999 conviction, the parties stipulated that a Drug Enforcement Administration agent would testify that he arrested defendant as he exited a train traveling from New York to Chicago with 10 packets of heroin taped to his stomach. The State argued that defendant's 1999 conviction was equivalent to a Class X felony, directing the trial court to defendant's plea declaration in his federal case. In that document, defendant admitted to possessing approximately 800 grams of heroin. Defendant's attorney did not object to the admission of this evidence.

¶ 6    In mitigation, defense counsel argued that both of defendant's prior convictions occurred several years before the instant case. Defendant had been employed as a construction worker and maintenance worker before being convicted in this case. Defense counsel noted that defendant had pled guilty to his two prior drug offenses, evincing his willingness to accept responsibility for his actions. Finally, defense counsel argued that he should be sentenced to a term of years because he was 56 years old at the time of sentencing.

¶ 7    The trial court sentenced defendant to mandatory natural life imprisonment, stating:

> "It gives me no pleasure to do this. Mr. Fernandez from all outward appearances is a nice man and he's always been respectful to this Court and as far as the Court can tell he's always been respectful to the court staff and personnel. But based on his background and based on this conviction this Court will sentence the defendant to natural[ ]life in prison."

Defendant appeals.

¶ 8                                    II. ANALYSIS

¶ 9    Defendant's arguments concern the constitutionality and scope of the Act. We first address his nonconstitutional arguments. See *People v. Brown*, 225 Ill. 2d 188, 200 (2007) ("If a court can resolve a case on nonconstitutional grounds, it should do so. [Citation.] Constitutional issues should be reached only as a last resort.").

¶ 10                              A. 1999 Federal Conviction

¶ 11    Defendant contends that his life sentence is void, because his 1999 federal conviction is not a qualifying offense under the Act, where it does not have the same elements as a Class X felony. Defendant also argues that the trial court's examination of the facts underlying his 1999 federal conviction ran afoul of his sixth amendment right to a jury trial as interpreted by *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Finally, defendant claims that his trial attorney was ineffective for failing to object to the use of his federal conviction as a qualifying offense under the Act. The State argues that defendant forfeited this issue, and even if he had preserved it, defendant's reading of the Act is inaccurate. We first address the State's forfeiture argument and then address defendant's statutory and constitutional claims.

¶ 12    In support of its forfeiture argument, the State points to the Act, which provides that "[a]ny claim that a previous conviction offered by the prosecution is not a former conviction

of an offense set forth in this Section because of the existence of any exceptions described in this Section, is waived unless duly raised at the hearing on that conviction, or unless the prosecution's proof shows the existence of the exceptions described in this Section." 730 ILCS 5/5-4.5-95(a)(8) (West 2010); see also *People v. Brown*, 229 Ill. 2d 374, 389 (2008) ("if defendant fails to rebut the presumption of his eligibility at his sentencing hearing, he will have forfeited the right to do so on direct appeal").

¶ 13    Defendant acknowledges that he failed to challenge whether his federal conviction satisfied the Act, but cites the exception to forfeiture set forth in *Brown*: "[I]f the State's evidence concerning the defendant's prior convictions does not support the inference of eligibility because the evidence, on its face, demonstrates that defendant's prior convictions do not meet all of the requirements of [the] section *** defendant will not be prohibited from challenging his sentence on appeal." *Brown*, 229 Ill. 2d at 389-90. The *Brown* court stated that, where the State's evidence was deficient on its face, the defendant's sentence would be void and subject to challenge at any time. *Id.* at 391-92.[1]

¶ 14    Here, the State's evidence regarding defendant's federal conviction, on its face, met the requirements of the Act. At his sentencing hearing, defendant stipulated to testimony that, in 1999, he was arrested by federal agents with 10 packets of heroin taped to his stomach. He stipulated that he later pled guilty to possession of heroin with intent to distribute for that offense. The State presented the trial court with a certified copy of defendant's federal conviction and asked that the plea declaration in that case be incorporated as part of its evidence in aggravation. Defendant did not object to the State's use of his federal plea declaration. Defendant's plea declaration stated that he was in possession of "approximately 100 pellets of heroin, weighing roughly 800 grams." This evidence, on its face, shows that defendant's federal conviction would qualify as a Class X offense under Illinois law. Without any objection to this evidence, defendant forfeited review of this issue.

¶ 15    Even if defendant had preserved this issue, we would find that his federal conviction would qualify as a predicate offense under the plain language of the Act. The Act mandates that "[e]very person who has been twice convicted in any state or federal court of an offense that *contains the same elements* as an offense now *** classified in Illinois as a Class X felony *** and who is thereafter convicted of a Class X felony *** committed after the 2 prior convictions, shall be adjudged an habitual criminal." (Emphasis added.) 730 ILCS 5/5-4.5-95 (West 2010). Defendant argues that, by the plain language of the statute, an offense in another jurisdiction only supports habitual criminal status if that offense included the "same elements" as a Class X felony in Illinois.

¶ 16    Under Illinois law, a drug offense is a Class X felony only where the State proves beyond a reasonable doubt that the defendant possessed a certain *type* of substance (*e.g.*, heroin, peyote, or amphetamine) and certain *amount* of that substance (*e.g.*, 15 grams of heroin, 200 grams of peyote, or 200 grams of amphetamine). 720 ILCS 570/401(a)(1)(A), (a)(4), (a)(6) (West 2010). In other words, when a defendant is subject to Class X sentencing for possession of a controlled substance with intent to deliver, the drug *type* and *amount* are

---

[1]Although defendant contends that the exception to forfeiture stated in *Brown* and voidness are separate grounds excusing his forfeiture, the *Brown* court's exception to forfeiture was its interpretation of the voidness rule in the specific context of the Act. *Brown*, 229 Ill. 2d at 391-92. Accordingly, we will consider the *Brown* exception and voidness as one.

elements of the offense. *People v. Jones*, 174 Ill. 2d 427, 428-29 (1996). In Illinois, without proving type or quantity, a conviction for possession of a controlled substance with intent to deliver is only a Class 3 felony. 720 ILCS 570/401(a) (West 2010). Under federal law, type and amount are sentencing factors, not substantive elements of the offense. See *United States v. Martinez*, 301 F.3d 860, 865 (7th Cir. 2002) ("drug type and quantity are not elements of the offense" under federal law); *United States v. Washington*, 558 F.3d 716, 719 (7th Cir. 2009) (same); *United States v. Clark*, 538 F.3d 803, 811-12 (7th Cir. 2008); *Knox v. United States*, 400 F.3d 519, 523 (7th Cir. 2005) (same); *United States v. Smith*, 34 F.3d 514, 519 (7th Cir. 1994) (same). According to defendant, the fact that the type and quantity of narcotics he possessed in 1999 were not elements of his federal offense meant that he pled guilty to an offense with the same elements as a Class 3 felony in Illinois, not an offense with the same elements as a Class X felony.

¶ 17       Defendant's observation that drug quantity and type are not elements under federal law is correct. However, Illinois courts have rejected a formalistic interpretation of the Act. In *People v. Cannady*, 159 Ill. App. 3d 1086 (1987), the defendant challenged his sentence of life imprisonment under the Act, where the State failed to prove beyond a reasonable doubt that he had committed three Class X felonies. Specifically, he argued that his 1969 Class 1 felony rape conviction did not constitute proof beyond a reasonable doubt of an offense that contains the same elements as a Class X felony. *Id.* at 1090. The court rejected that argument and observed that "although the 1969 rape conviction was listed as a Class 1 felony, Class 1 was the top grade felony at that time and no Class X classification existed. *** [W]e agree with the trial court that the rape *** constituted an offense equivalent to those felonies presently categorized as Class X felonies." *Id.*

¶ 18       Similarly, in *People v. King*, 178 Ill. App. 3d 340, 346-47 (1988), the court upheld the defendant's sentence under the Act even though his prior Wisconsin conviction for second-degree criminal sexual assault did not contain precisely the same elements as aggravated criminal sexual assault. In *King*, the defendant was sentenced to natural life under the Act based in part on his prior conviction for second-degree criminal sexual assault in Wisconsin. *Id.* at 346. In Wisconsin, the State proved second-degree criminal sexual assault if it established two elements: (1) sexual intercourse (2) by the use or threat of force or violence. *Id.* By contrast, the offense of aggravated criminal sexual assault–a Class X offense in Illinois–required the proof of three elements: (1) a sexual act of penetration (2) by force or use of force (3) during the commission of a felony. *Id.* The *King* court, citing *Cannady*, found that the elements of Wisconsin's second-degree criminal sexual assault were equivalent to the elements of aggravated criminal sexual assault in Illinois, as his Wisconsin criminal sexual assault was committed during the course of a robbery. *Id.* at 346-47.

¶ 19       Here, as in *Cannady* and *King*, defendant's federal conviction was equivalent to a Class X felony in Illinois. Defendant's federal drug case, had it been tried under Illinois law, would have been a Class X felony. 720 ILCS 570/401(a)(1)(C) (West 1998). The only factor distinguishing his 1999 federal conviction from a Class X is that drug *type* and *amount* are not essential elements of the offense under federal law. 21 U.S.C. § 841(a)(1) (1994). If we were to adopt defendant's position, a federal drug conviction could *never* serve as a Class X equivalent–even if it would qualify as a Class X felony if tried under Illinois law–because drug type and amount are never elements under federal law. As shown by *Cannady* and *King*, however, we have rejected such a formalistic interpretation of the Act.

¶ 20    Adopting defendant's interpretation would also contravene the legislature's clear intent to include certain federal drug offenses as predicate offenses under the Act. The plain language of the Act shows that the legislature intended federal offenses to qualify under the Act. 730 ILCS 5/5-4.5-95(a)(1) (West 2010) (including convictions from "any state or *federal* court" (emphasis added)). At the time the Act was amended to include federal offenses, the manufacture or delivery of 30 or more grams of cocaine was a Class X felony. Ill. Rev. Stat. 1979, ch. 56½, ¶ 1401(a). This shows that the legislature intended to include federal drug offenses as qualifying offenses under the Act so long as they would qualify as Class X offenses if tried under Illinois law.

¶ 21    The legislative history of the Act bolsters this conclusion. When the legislature amended the Act to include offenses from other jurisdictions, the bill's sponsor expressly stated that federal convictions would apply:

> "[W]hen we passed Class X Felony, we once again reinstituted the Habitual Criminal Act ***. *** If you are a habitual criminal under our Act, today, of course, you can be sentenced for life imprisonment for conviction of the third felony. But under present law, those felonies have to be after February 1st, [*sic*] 1978, and other jurisdictions such as *Federal* and sister states would not apply. What this amendment does is ... exactly reversed [*sic*] that situation. *** *[O]ther jurisdictions would qualify*, providing their elements were *** the same or close to the elements contained in the Illinois [s]tatutes." (Emphases added.) 81st Ill. Gen. Assem., Senate Proceedings, June 27, 1980, at 27 (statements of Senator Sangmeister).

The sponsor also noted that amendment "added a few additional triggering categories, such as home invasion, heinous battery, *hard drug sales*, calculated criminal drug conspiracy and armed violence." (Emphasis added.) *Id.* at 30. If we adopted defendant's interpretation of the Act, we would contravene the legislature's intent to include serious federal drug convictions as qualifying felonies under the Act. We decline to do so.

¶ 22    In a related argument, defendant contends that *Taylor v. United States*, 495 U.S. 575 (1990), and *Descamps v. United States*, 570 U.S. ___, 133 S. Ct. 2276 (2013), mandate that we interpret the Act so that courts may only look to the elements of a prior conviction–not the defendant's conduct underlying the conviction–to enhance his sentence under the Act. Defendant contends that those cases show that his sixth amendment right to a jury trial was violated when the trial court looked beyond the elements of his federal offense in applying the Act. In order to analyze defendant's argument, we must discuss both *Taylor* and *Descamps*.

¶ 23    In *Taylor*, the defendant pled guilty to illegally possessing a firearm. *Taylor*, 495 U.S. at 578. Under federal law at the time, a defendant who had been convicted of three previous "violent felon[ies]" was eligible for a minimum sentence of 15 years' incarceration. (Internal quotation marks omitted.) *Id.* "Violent felon[ies]" included "burglary, arson, or extortion, *** or [offenses] otherwise involv[ing] conduct that present[ed] a serious potential risk of physical injury to another." (Internal quotation marks omitted.) *Id.* The defendant had two prior convictions for second-degree burglary under Missouri law, which, he argued, did not qualify as "violent felonies" under the federal statute because the Missouri burglary statute did not require the offense to pose a serious potential risk of physical injury to another. *Id.* at 578-79.

¶ 24    After reviewing the legislative history of the federal statute at issue, the *Taylor* Court rejected the defendant's argument. *Id.* at 581-90, 598. The Court held that the enhancement applied to anyone convicted of an offense involving the "generic" elements of burglary: unlawful entry into a building with intent to commit a crime. *Id.* at 599. The Court concluded that, when assessing whether a burglary conviction constituted the "generic" burglary encompassed in the statute, the trial court should "look only to the fact of conviction and the statutory definition of the prior offense." *Id.* at 602. The Court added, however, that the trial court could look beyond the elements of the offense where a state burglary statute permitted the state to prove an element of "generic" burglary or an alternative element, such as a statute defining burglary as unlawful entry into a car as well as a building. *Id.* The Court noted that, in such a case, "if the indictment or information and jury instructions show that the defendant was charged only with a burglary of a building, and that the jury necessarily had to find an entry of a building to convict, then the Government should be allowed to use the conviction for enhancement." *Id.*

¶ 25    In *Descamps*, the Court reviewed whether a conviction under a California burglary statute qualified to meet the definition of "generic" burglary outlined in *Taylor*. *Descamps*, 570 U.S. at ___, 133 S. Ct. at 2281-82. Under that statute, a "person who enter[ed]" certain locations with the intent to commit a theft committed burglary. (Internal quotation marks omitted.) *Id.* at ___, 133 S. Ct. at 2282. This statute was thus broader than *Taylor*'s definition of "generic" burglary, as it did not require an *unlawful* entry into a building. *Id.* at ___, 133 S. Ct. at 2285-86.

¶ 26    The *Descamps* Court held that, because the statute did not require unlawful entry as even an alternative element, the defendant's California burglary conviction could not enhance the defendant's sentence. *Id.* at ___, ___, 133 S. Ct. at 2285-86, 2293. The Court stressed that "[w]hether [the defendant] *did* break and enter makes no difference," as the elements of the California burglary statute did not require the State to prove breaking and entering in any event. (Emphasis in original.) *Id.* at ___, 133 S. Ct. at 2286. The Court stated that the trial court could only look to the plea colloquy or other documents outside the elements of the offense if the California burglary statute had included breaking and entering as an alternative element, *i.e.*, that there was some possibility that the State had to prove beyond a reasonable doubt that the defendant had unlawfully entered a building. *Id.* at ___, 133 S. Ct. at 2286.

¶ 27    In reaching that conclusion, the *Descamps* Court highlighted the sixth amendment implications of "extending judicial factfinding beyond the recognition of a prior conviction." *Id.* at ___, 133 S. Ct. at 2288. Specifically, the Court noted that, as interpreted by *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the sixth amendment requires that any fact, other than the fact of a prior conviction, that increases the penalty for a crime must be submitted to a jury and proved beyond a reasonable doubt. *Descamps*, 570 U.S. at ___, 133 S. Ct. at 2288 (citing *Apprendi*, 530 U.S. at 490). To permit the "sentencing court to 'make a disputed' determination 'about what the defendant and state judge must have understood as the factual basis of the prior plea,'" would thus raise constitutional concerns. *Descamps*, 570 U.S. at ___, 133 S. Ct. at 2288 (quoting *Shepard v. United States*, 544 U.S. 13, 25 (2005) (plurality op.)).

¶ 28    We recognize that *Taylor* and *Descamps* carry some persuasive force in this case. Like the statute at issue in those cases, the Act requires a sentencing court to determine whether a defendant's foreign-jurisdiction convictions qualify as predicate offenses for natural life

sentencing. The *Descamps* Court highlighted the potential constitutional infirmity that could arise if, in enhancing a defendant's sentence, courts looked to facts that had never been proved beyond a reasonable doubt before a jury. *Descamps*, 570 U.S. at ___, 133 S. Ct. at 2288. In this case, to establish that defendant's federal conviction qualified under the Act, the State directed the court to look to defendant's plea declaration in his 1999 federal case, in which he admitted to possessing 800 grams of heroin. As the *Descamps* Court suggested, such judicial fact-finding could run afoul of the sixth amendment, as any fact, other than a prior conviction, increasing the penalty for an offense must be submitted to a jury and proved beyond a reasonable doubt. *Id.* at ___, 133 S. Ct. at 2288 (citing *Apprendi*, 530 U.S. at 490).

¶ 29    Despite the persuasive rationale of those cases, defendant has forfeited this issue for review. See *United States v. Cotton*, 535 U.S. 625, 627-29, 631 (2002) (sixth amendment claims under *Apprendi* are subject to forfeiture); *People v. Crespo*, 203 Ill. 2d 335, 346 (2001) (finding that the defendant had forfeited his *Apprendi* claim because he failed to object at trial). At his sentencing hearing in this case, defendant stipulated to testimony at trial establishing that he possessed 10 packets of heroin taped to his stomach. He raised no objection to the State using his federal plea declaration to establish that those packets contained approximately 800 grams of heroin. Accordingly, defendant forfeited the issue of whether the sentencing court's finding that he was eligible under the Act violated his sixth amendment right to a jury trial. As we explained above, the exception to forfeiture outlined in *Brown* does not apply in this case. We decline to address the question of whether the procedure in this case violated defendant's rights under *Apprendi*.

¶ 30    Defendant also does not contend that any sixth amendment violation in his sentencing constituted plain error exempt from forfeiture. See Ill. S. Ct. R. 615(a); *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007). He has thus forfeited any contention that this error constituted plain error. See *People v. Hillier*, 237 Ill. 2d 539, 545-46 (2010) ("[W]hen a defendant fails to present an argument on how either of the two prongs of the plain-error doctrine is satisfied, he forfeits plain-error review.").

¶ 31    Even if defendant had preserved plain error, however, any error in this case would not amount to plain error. See *United States v. Cotton*, 535 U.S. 625, 632-33 (2002) (plain error rule applied to an alleged violation of *Apprendi*); *People v. Nitz*, 219 Ill. 2d 400, 414 (2006) (same). An alleged *Apprendi* violation does not constitute plain error where the defendant was not prejudiced because undisputed evidence indicates that the State could have proved the sentence-enhancing facts beyond a reasonable doubt. *E.g.*, *People v. Kaczmarek*, 207 Ill. 2d 288, 302-04 (2003); *Crespo*, 203 Ill. 2d at 348-49; *People v. Simmons*, 342 Ill. App. 3d 185, 193-94 (2003).

¶ 32    Here, the undisputed evidence at the sentencing hearing proved that defendant possessed approximately 800 grams of heroin when he was arrested by federal authorities in 1999. Defendant pled guilty to the 1999 federal charge and stipulated to the type and quantity of narcotics involved in his plea declaration. He again stipulated to the facts underlying that offense at his sentencing hearing in this case. Those facts indisputably established that defendant was arrested in 1999 in possession of approximately 800 grams of heroin. Nothing in the record suggests that the State would have failed to prove the type and quantity of narcotics beyond a reasonable doubt. Defendant cannot show prejudice resulting from the failure to submit those facts to a jury or to apply the burden of proof beyond a reasonable doubt.

¶ 33    Finally, defendant contends that his trial attorney was ineffective for failing to object to the use of his federal conviction as a predicate offense. To prevail on a claim of ineffective assistance of counsel, the defendant must show both: (1) that his attorney's performance fell below an objective standard of reasonableness; and (2) that, absent his attorney's errors, there is a reasonable probability that the outcome of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *People v. Albanese*, 104 Ill. 2d 504, 526-27 (1984). A failure to establish either prong precludes a finding of ineffective assistance of counsel. *People v. Henderson*, 2013 IL 114040, ¶ 11. The defendant must overcome the strong presumption that trial counsel's inaction was the product of sound trial strategy. *People v. Evans*, 186 Ill. 2d 83, 93 (1999). Our supreme court has highlighted that, when a defendant challenges his attorney's failure to take some action on direct appeal, "the record will frequently be incomplete or inadequate to evaluate that claim because the record was not created for that purpose." *Henderson*, 2013 IL 114040, ¶ 22 (citing *Massaro v. United States*, 538 U.S. 500, 504-05 (2003)).

¶ 34    In this case, the record is inadequate to evaluate defendant's assertion that counsel's failure to challenge his sentence prejudiced him. See *People v. Bew*, 228 Ill. 2d 122, 133-35 (2008) (rejecting the defendant's claim that his attorney was ineffective for failing to file a motion to suppress where the record was inadequate to evaluate counsel's performance). Nothing in the record shows that, had counsel objected to the use of defendant's 1999 federal conviction, there was a reasonable likelihood that his sentencing hearing would have been different. Nothing in the record indicates that the State would have failed to prove that defendant possessed approximately 800 grams of heroin in 1999. To the contrary, the evidence adduced at defendant's sentencing hearing shows that he admitted to possessing approximately 800 grams of heroin in 1999. Defendant fails to suggest any avenue by which his attorney could have undermined or challenged that evidence if the type and amount of narcotics were submitted to a jury and subjected to the burden of proof beyond a reasonable doubt. In the absence of evidence to the contrary, we must presume that trial counsel elected not to challenge those facts because he could not reasonably do so.

¶ 35    We note that our decision does not preclude defendant from bringing a challenge to his attorney's performance in a collateral proceeding should he have evidence that his attorney's failure to object to his sentence prejudiced him. *Bew*, 228 Ill. 2d at 135. Based on the record before us, however, we cannot conclude that counsel rendered ineffective assistance.

¶ 36    In sum, we conclude that defendant forfeited his challenge to his mandatory life without parole sentence under the Act. Even if defendant had not forfeited his claim, the plain language of the Act shows that the legislature intended to include serious federal drug offenses like defendant's as predicate offenses. We find that defendant has also forfeited his contention that his sixth amendment right to a trial by jury was violated by the trial court's examination of the facts underlying his federal conviction to establish his habitual criminal status, and that the record does not support his claim that his attorney rendered ineffective assistance in failing to object to his sentence.

¶ 37                                B. Eighth Amendment

¶ 38    Defendant argues that his natural life sentence is grossly disproportionate to the severity of his offense and therefore violates the eighth amendment of the United States Constitution. Defendant admits that "United States Supreme Court jurisprudence weighs against his

claim," but urges us find that his sentence is cruel and unusual in light of our evolving standards of decency. We reject defendant's eighth-amendment claim based upon binding United States Supreme Court precedent.

¶ 39 The eighth amendment states that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. In *Harmelin v. Michigan*, 501 U.S. 957, 994-96 (1991), the United States Supreme Court held that mandatory life imprisonment for a first-time drug offender did not violate the eighth amendment. The defendant in *Harmelin* had been convicted of possessing 672 grams of cocaine and was sentenced to mandatory life imprisonment without the possibility of parole. *Id.* at 961. The Court held that this sentence did not constitute cruel and unusual punishment. *Id.* at 994-97.

¶ 40 We are compelled to apply *Harmelin* to this case. Here, defendant was convicted of distributing more than 900 grams of cocaine, which is a greater amount than the *Harmelin* defendant possessed. Defendant had also been convicted of two prior drug offenses involving large quantities of drugs. Under *Harmelin*, we cannot say that defendant's sentence violated the eighth amendment. See also *Ewing v. California*, 538 U.S. 11, 30-31 (2003) (upholding a sentence of life imprisonment under California's three-strikes statute, despite the third offense being the theft of three golf clubs).

¶ 41 Illinois courts have also repeatedly held that the Habitual Criminal Act does not violate the eighth amendment. See *People v. Dunigan*, 165 Ill. 2d 235, 247-48 (1995); *People v. Bryant*, 278 Ill. App. 3d 578, 587 (1996); *People v. Robinson*, 268 Ill. App. 3d 1019, 1025-26 (1994); *People v. Gaston*, 259 Ill. App. 3d 869, 877 (1994); *People v. Wilson*, 257 Ill. App. 3d 826, 835 (1994); *People v. McCall*, 190 Ill. App. 3d 483, 496 (1989); *People v. Franzen*, 183 Ill. App. 3d 1051, 1059 (1989); *People v. Morissette*, 150 Ill. App. 3d 431, 443-44 (1986); *People v. Hartfield*, 137 Ill. App. 3d 679, 690-91 (1985). While those decisions concern only violent offenses, in light of *Harmelin*, we cannot find a basis to depart from Illinois precedent. Accordingly, we reject defendant's eighth amendment challenge.

¶ 42                    C. Proportionate Penalties Clause

¶ 43 Defendant further argues that the Act, as applied in this case, violates Illinois's proportionate penalties clause. The State argues that the nature of defendant's offense, as well as his history of recidivism, justified the imposition of a mandatory natural life sentence. We acknowledge that a sentence of mandatory natural life without parole for a nonviolent offender with only three felony drug convictions is an extremely harsh punishment. After careful consideration, however, we are compelled to uphold defendant's sentence.

¶ 44 All statutes carry a strong presumption of constitutionality. *People v. Sharpe*, 216 Ill. 2d 481, 487 (2005). Defendant has the burden to demonstrate that the statute is unconstitutional. *People v. Alcozer*, 241 Ill. 2d 248, 259 (2011). The legislature has broad discretion in setting criminal penalties and may pass statutes that prescribe mandatory sentences, even if those statutes restrict the judiciary's sentencing discretion. *People v. Taylor*, 102 Ill. 2d 201, 208 (1984); *Sharpe*, 216 Ill. 2d at 487. The legislature's power is not unlimited, however, as the sentences it prescribes must satisfy constitutional constraints. *People v. Morris*, 136 Ill. 2d 157, 161 (1990). We will not overrule the legislature's sentencing mandates, unless the penalty is clearly in excess of the general constitutional limitations. *Alcozer*, 241 Ill. 2d at

259. Our review of this question of law is *de novo*. *People v. Masterson*, 2011 IL 110072, ¶ 23.

¶ 45 The proportionate penalties clause states that "[a]ll penalties shall be determined both according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. A statute is unconstitutionally disproportionate if the punishment for the offense is cruel, degrading, or so wholly disproportionate to the offense as to shock the moral sense of the community. *Sharpe*, 216 Ill. 2d at 487; *People v. Miller*, 202 Ill. 2d 328, 339-41 (2002). The Illinois Supreme Court has "never defined what kind of punishment constitutes 'cruel,' 'degrading,' or 'so wholly disproportioned to the offense as to shock the moral sense of the community.' " *Miller*, 202 Ill. 2d at 339. "This is so because, as our society evolves, so too do our concepts of elemental decency and fairness which shape the 'moral sense' of the community." *Id.*

¶ 46 In *People v. Clemons*, 2012 IL 107821, ¶¶ 39-40, the Illinois Supreme Court stated that the proportionate penalties clause, "which focuses on the objective of rehabilitation," places greater limitations on the legislature's ability to prescribe harsh sentences than the eighth amendment of the United States Constitution. The court noted that the requirement that all sentences be determined "with the objective of restoring the offender to useful citizenship," was added to the 1970 Illinois Constitution as "a limitation on penalties beyond those afforded by the eighth amendment." (Internal quotation marks omitted.) *Id.* ¶ 39. Although *Clemons* simply held that the proportionate penalties clause included a restriction that offenses with the same elements carry the same penalties, we find that the constitutional principles discussed in *Clemons* are relevant to this case. *Id.* ¶¶ 39-40, 53. We review defendant's proportionate-penalties claim with those principles in mind.

¶ 47 Under the Act, a defendant is a habitual criminal, subject to a sentence of mandatory natural life without the possibility of parole, if he is convicted of three separate Class X offenses in 20 years, excluding time in custody. 730 ILCS 5/5-4.5-95(a) (West 2010). In this case, defendant was convicted of Class X delivery of a controlled substance for his delivery of more than 900 grams of cocaine to an undercover police officer. 720 ILCS 570/401(a)(2)(D) (West 2010). In 1992, defendant was convicted of Class X delivery of a controlled substance for his delivery of 400 to 900 grams of cocaine to an undercover police officer. 720 ILCS 570/401(a)(2)(C) (West 1992). In 1999, defendant was convicted of possession of more than 800 grams of heroin in federal court, which, if tried in Illinois, would have been a Class X felony. 720 ILCS 570/401(a)(1)(C) (West 1998). As a result of defendant's three drug offenses, the Act required the trial court to sentence defendant to natural life imprisonment without the possibility of parole. Defendant contends that, as applied to him, the Act violates the proportionate penalties clause.

¶ 48 The parties do not cite–nor were we able to find–Illinois decisions addressing mandatory natural life imprisonment under the Act for nonviolent offenses.[2] It appears, therefore, that this is an issue of first impression in Illinois. In analyzing this issue, we first look to our supreme court's precedent regarding proportionate-penalties challenges to the Act.

_____

[2]As of 2012, only 10 people in Illinois were serving that sentence for nonviolent offenses. American Civil Liberties Union, A Living Death: Life Without Parole for Nonviolent Offenses 22 (2013), http://www.aclu.org/files/assets/111813-lwop-complete-report.pdf.

¶ 49     Our supreme court upheld the Act's constitutionality under the proportionate penalties clause in *People v. Dunigan*, 165 Ill. 2d 235, 244-47 (1995). In *Dunigan*, the defendant was convicted of criminal sexual assault and sentenced to mandatory natural life without parole due to his two prior convictions for rape. *Id.* at 238. The court rejected the defendant's proportionate-penalties clause challenge to his sentence. *Id.* at 244-47. The court noted that, as a general matter, statutes mandating natural life sentences do not violate the proportionate penalties clause. *Id.* at 245-46. The court highlighted that the "legislature obviously considered the seriousness of the offense when it enacted the Act, which applies only to *** offenses recognized to be particularly violent and dangerous to society." *Id.* at 246. The court also found that the legislature "weighed the rehabilitative potential of offenders by limiting the Act to those offenders who have a third serious felony conviction within a prescribed period of time." *Id.* Subsequent cases have uniformly upheld the Act in the face of proportionate penalties challenges. *E.g.*, *People v. Huddleston*, 212 Ill. 2d 107, 148 (2004) (defendant convicted of three counts of predatory criminal sexual assault); *People v. Brown*, 2012 IL App (1st) 091940, ¶¶ 63-80 (defendant convicted of multiple murders); *People v. Cummings*, 351 Ill. App. 3d 343, 348-49 (2004) (defendant convicted of armed robbery who had prior convictions for murder and armed robbery); *People v. Sanchez*, 344 Ill. App. 3d 74, 77, 84-85 (2003) (defendant convicted of aggravated criminal sexual assault of a 13-year-old with a prior sexual assault of a 5-year-old).

¶ 50     While *Dunigan* and its progeny have uniformly upheld the Act in the face of proportionate penalties challenges, none of these cases involved individuals, like defendant, whose qualifying offenses are all nonviolent, drug offenses. Like the *Dunigan* court, we recognize that the legislature limited the Act's application to Class X offenses and to defendants who have exhibited recidivist tendencies. Still, while this precedent carries considerable weight, it does not directly bear upon the particular question at issue in this case: whether the Act, as applied to defendant, violates the proportionate penalties clause.

¶ 51     Defendant cites *People v. Miller*, 202 Ill. 2d 328 (2002), in support of his contention that his mandatory life-without-parole sentence violates the proportionate penalties clause. In *Miller*, our supreme court held that, as applied, a mandatory life imprisonment scheme at issue violated the proportionate penalties clause. *Miller*, 202 Ill. 2d at 341. In that case, the 15-year-old defendant was convicted, under an accountability theory, of two counts of first degree murder, and he was sentenced to mandatory natural life imprisonment under the statute requiring such a penalty for defendants convicted of multiple murders. *Id.* at 330. The trial court stated that, even though it did not doubt the defendant's guilt, mandatory life imprisonment without the possibility of parole would be "blatantly unfair and highly unconscionable," where the defendant "never picked up a gun" yet was "in the same situation as a serial killer for sentencing purposes." (Internal quotation marks omitted.) *Id.* at 331-32. The trial judge declined to impose life imprisonment based on the proportionate penalties clause. *Id.* at 332.

¶ 52     The *Miller* court agreed that imposing a "mandatory sentence of natural life in prison with no possibility of parole [on the defendant] grossly distorts the factual realities of the case and does not accurately represent defendant's personal culpability such that it shocks the moral sense of the community." *Id.* at 341. The court noted that the mandatory sentence deprived the trial court of the opportunity to consider the facts of the case in fashioning a sentence. *Id.* at 340. In striking down the defendant's sentence as shocking to the moral sense

of the community, the *Miller* court highlighted the defendant's age and his diminished culpability as an accomplice:

> "This moral sense is particularly true, as in the case before use, where a 15-year-old with one minute to contemplate his decision to participate in the incident and stood as a lookout during the shooting, but never handled a gun, is subject to life imprisonment with no possibility of parole–the same sentence applicable to the actual shooter." *Id.* at 341.

That diminished culpability, along with the defendant's "greater rehabilitative potential" as a juvenile, led the court to conclude that a natural life sentence was grossly disproportionate to the severity of the defendant's conduct. *Id.* at 341-42.

¶ 53      Here, defendant had been convicted of three drug offenses, the only convictions in his background. Unlike the defendant in *Miller*, none of defendant's convictions in this case involved the use or threat of violence. Like the trial court in *Miller*, the trial court in this case was precluded from taking any mitigating evidence into account in fashioning defendant's sentence. In fact, the record shows that, had the trial court not been required to sentence defendant to mandatory life without parole, it likely would have imposed a lesser sentence:

> "It gives me no pleasure to do this. Mr. Fernandez from all outward appearances is a nice man and he's always been respectful to this Court and as far as the Court can tell he's always been respectful to the court staff and personnel. But based on his background and based on this conviction this Court will sentence the defendant to natural[ ]life in prison."

Like *Miller*, this case shows the distorting effect of mandatory life sentences without the possibility of parole. The Act required the court to impose the harshest available penalty in Illinois while simultaneously precluding the sentencing court from taking into account any of defendant's mitigating characteristics or circumstances.

¶ 54      Despite these similarities, three critical facts distinguish this case from *Miller*. First, defendant was not a juvenile. He was 55 years old at the time of this offense. His earliest conviction resulted from conduct he committed when he was 36 years old. Defendant thus lacks the degree of rehabilitative potential inherent in the *Miller* defendant's youth. Second, defendant was not convicted as an accomplice. Whereas the defendant in *Miller* was less culpable by virtue of the fact that he did not actually perform the acts underlying his conviction, defendant was the principal in this case. Unlike the defendant in *Miller*, defendant did not have the twice-diminished culpability of a juvenile convicted under an accomplice theory. Third, unlike *Miller*, defendant's involvement in this crime was not a spontaneous decision. It followed careful planning and the recruitment of an accomplice. Given the importance of these facts to the *Miller* court's rationale, we find that this case is distinct from *Miller*.

¶ 55      In light of the dearth of Illinois precedent on the precise issue presented in this case, we look to the United States Supreme Court's eighth amendment proportionality jurisprudence for further guidance. See *People ex rel. Burris v. Ryan*, 147 Ill. 2d 270, 280 (1991) (noting that Illinois courts may look to federal courts for guidance in interpreting the Illinois Constitution). In *Solem v. Helm*, 463 U.S. 277, 281, 284 (1983), the Court invalidated a mandatory natural life sentence for a defendant convicted of his seventh nonviolent felony. The defendant in *Solem* pled guilty to uttering a "no account" check for $100, a felony in South Dakota. *Id.* at 281. At the time of the offense, the defendant had three burglary

convictions, a conviction for obtaining money under false pretenses, a conviction for grand larceny, and a conviction for driving while intoxicated. *Id.*at 279-80. South Dakota law mandated a natural life sentence without the possibility of parole for any defendant with at least three prior felony convictions. *Id.* at 281-82. Accordingly, the defendant was sentenced to mandatory natural life without the possibility of parole. *Id.* at 282.

¶ 56 In addressing the defendant's as-applied challenge to South Dakota's sentencing scheme, the *Solem* Court observed that the defendant's crime "involved neither violence nor threat of violence to any person." *Id.* at 295-96. The Court stressed that the defendant's "prior offenses, although classified as felonies, were all relatively minor." *Id.* at 296-97. Looking at the punishment itself, the Court noted that the defendant's sentence was "the most severe punishment that the State could have imposed on any criminal for any crime," as South Dakota did not authorize the death penalty at the time of the defendant's sentencing. *Id.* at 297. The Court struck down the defendant's sentence as "significantly disproportionate to his crime" because he "received the penultimate sentence for relatively minor criminal conduct." *Id.* at 303.

¶ 57 By contrast, in *Harmelin v. Michigan*, 501 U.S. 957 (1991) (plurality op.), the Court held that the eighth amendment did not prohibit the imposition of mandatory natural life without parole on a defendant convicted of possessing a large quantity of narcotics. In *Harmelin*, Justice Scalia and Chief Justice Rehnquist found that, outside of the context of the death penalty, the text of the eighth amendment did not justify any review of the proportionality of a sentence to an offense. *Id.* at 993-94. Justices Kennedy, O'Connor, and Souter, while recognizing that the eighth amendment did prohibit some disproportionate sentences, found that the defendant's mandatory natural life sentence for possessing 650 grams of cocaine was not so "grossly disproportionate" as to violate the eighth amendment. *Harmelin*, 501 U.S. at 1008 (Kennedy, J., concurring in part and concurring in judgment, joined by O'Connor and Souter, JJ.). Justice Kennedy's opinion stressed that, in passing the sentencing statute at issue, the legislature could have rationally concluded that "the threat posed to the individual and society by possession of this large an amount of cocaine–in terms of violence, crime, and social displacement–is momentous enough to warrant the deterrence and retribution of a life sentence without parole." *Id.* at 1003. After reviewing the societal problems caused by narcotics trafficking, Justice Kennedy's opinion rejected the defendant's "suggestion that his crime was nonviolent and victimless" as being "false to the point of absurdity." *Id.* at 1002. Since *Harmelin*, courts have applied the principles outlined in Justice Kennedy's concurring opinion. *Henderson v. Norris*, 258 F.3d 706, 709 (8th Cir. 2001).

¶ 58 Certain factors present in *Solem* are also present in this case. Defendant was convicted of selling 900 grams of cocaine to an undercover police officer, an offense that did not involve violence or a threat of violence. Neither of defendant's two prior drug convictions involved a threat of violence. Whereas the defendant in *Solem* had six prior felony convictions, defendant had only three convictions in his background. Like the sentencing scheme in *Solem*, the mandatory natural life without parole sentence imposed by the Act does not take into account the nature of defendant's offense or his criminal background.

¶ 59 We also acknowledge that, in certain respects, the reasoning of *Solem* is more persuasive than that of *Harmelin*. Unlike the eighth amendment, Illinois's proportionate penalties clause expressly demands that sentences be proportionate to the offense. Ill. Const. 1970, art. I, § 11. In fact, our supreme court has found that the clause was intended "to provide a

limitation on penalties beyond those afforded by the eighth amendment." *Clemons*, 2012 IL 107821, ¶ 39. Whereas Justice Scalia and Chief Justice Rehnquist centered much of their analysis in *Harmelin* upon the absence of a proportionality requirement in the eighth amendment, there can be no doubt in this case that the Act must satisfy Illinois's express proportionality requirement.

¶ 60    Ultimately, the rationale of *Solem*, even when viewed in the context of Illinois's greater constitutional restrictions on sentencing, does not persuade us that defendant's sentence is unconstitutional. In that case, the defendant was convicted of the very minor offense of passing a bad check. Here, defendant has been convicted of distributing large quantities of narcotics on three separate occasions. Unlike the defendant in *Solem*, defendant cannot be said to have engaged in "relatively minor criminal conduct." *Solem*, 463 U.S. at 303.

¶ 61    We also find the reasoning of Justice Kennedy's opinion in *Harmelin* to be persuasive. Narcotics trafficking imposes significant damage on society. In each of defendant's cases, he was convicted of distributing or intending to distribute large quantities of either cocaine or heroin. Defendant's offenses cannot be seen as victimless or minor crimes. Rather, they exemplify the type of "hard drug sales" the legislature intended to punish under the Act. 81st Ill. Gen. Assem., Senate Proceedings, June 27, 1980, at 30 (statements of Senator Sangmeister). Our review of the United States Supreme Court's jurisprudence thus supports the conclusion that defendant's sentence is not wholly disproportionate to his offense.

¶ 62    In other jurisdictions, courts have varied in their review of mandatory natural life sentences without parole for drug offenders. Following *Harmelin*, lower federal courts have uniformly upheld mandatory life without parole sentences for drug offenses in the face of eighth amendment challenges. *E.g.*, *United States v. Speed*, 656 F.3d 714, 720 (7th Cir. 2011); *United States v. Prior*, 107 F.3d 654, 659-60 (8th Cir. 1997); *United States v. Kratsas*, 45 F.3d 63, 68 (4th Cir. 1995); *United States v. Hill*, 30 F.3d 48, 50 (6th Cir. 1994); *United States v. Van Winrow*, 951 F.2d 1069, 1071 (9th Cir. 1991); *Terrebonne v. Butler*, 848 F.2d 500, 505-07 (5th Cir. 1988). Some state courts have upheld mandatory life without parole sentences for defendants convicted of drug offenses in the face of eighth amendment challenges. *E.g.*, *State v. Lewis*, 46344-KA, at 12-14 (La. App. 2 Cir. 5/18/11); 69 So. 3d 604 (upheld mandatory life without parole sentence for defendant convicted of possession of cocaine, with three prior drug convictions and a burglary conviction); *State v. Kadonsky*, 671 A.2d 1064, 1066-67 (N.J. Super. Ct. App. Div. 1996) (upheld mandatory life sentence with 25 years of parole ineligibility for defendant convicted under "drug kingpin" statute); *Dodd v. State*, 879 P.2d 822 (Okla. 1994) (upheld mandatory life sentence for defendant convicted of trafficking 50 pounds of marijuana who had two prior convictions for drug offenses); *People v. Fluker*, 498 N.W.2d 431, 431-32 (Mich. 1993) (upheld mandatory life without parole for defendant convicted of delivery of 650 or more grams of cocaine, as opposed to mere possession). Other state courts have found that such a sentence violates the eighth amendment as applied to certain offenders. *E.g.*, *Wilson v. State*, 830 So. 2d 765, 767-68 (Ala. Crim. App. 2001) (defendant with no prior convictions sold 97.8 grams of liquid morphine to an undercover police officer); *People v. Bullock*, 485 N.W.2d 866, 867, 875-76 (Mich. 1992) (struck down Michigan law mandating life without parole for possession of 650 grams or more of cocaine).

¶ 63    Although we recognize that the Illinois Constitution places greater restrictions on criminal sentencing than the eighth amendment's prohibition of cruel and unusual

punishment, these jurisdictions' eighth amendment decisions still offer some guidance in this case. In cases involving recidivist offenders who traffic large quantities of narcotics, courts have upheld the imposition of mandatory life without parole sentences. In this case, defendant was convicted of distributing more than 900 grams of cocaine, after having been previously convicted of distributing 800 grams of heroin and between 400 and 900 grams of cocaine. Defendant's history of convictions depicts a distinctive pattern of recidivism in dealing large quantities of narcotics.

¶ 64 In light of all of the above considerations, we cannot conclude that defendant's mandatory natural life sentence violated the proportionate penalties clause. Defendant was convicted of distributing more than 900 grams of cocaine, a serious violation of Illinois law. In fact, that offense carries the highest sentencing range for distribution of cocaine under Illinois law: 15 to 60 years' incarceration. 720 ILCS 570/401(a)(2)(D) (West 2010). Defendant had been twice convicted of dealing in large quantities of narcotics–between 400 and 900 grams of cocaine and 800 grams of heroin–before this case. In light of the quantities of narcotics in each case, defendant has shown that he poses a significant risk to the community. Defendant's continual involvement in selling large quantities of narcotics, even following two prior convictions and sentences, diminishes the likelihood that he will rehabilitate. In light of these facts, we conclude that defendant's sentence of mandatory natural life without the possibility of parole does not violate the proportionate penalties clause.

¶ 65 Mandatory sentencing schemes like the Act deprive courts of the opportunity to exercise their discretion in fashioning sentences appropriate to individual defendants. *Wasman v. United States*, 468 U.S. 559, 563-64 (1984) (" '[h]ighly relevant–if not essential–to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics' " (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949))). In this case, the court was precluded from sentencing defendant to anything other than the most severe penalty in Illinois, even though the trial court's comments indicate that it believed that a lesser sentence was appropriate. While we recognize the harshness of that outcome, we are compelled to uphold defendant's sentence. Within constitutional bounds, the legislature has broad discretion to fashion the penalties for the criminal offenses it defines. The facts of this case do not indicate that, in imposing a mandatory natural life without parole sentence on defendant, the Act exceeds those bounds. We therefore are compelled to affirm defendant's sentence.

¶ 66                                                III. CONCLUSION

¶ 67 For the reasons stated above, we affirm defendant's conviction and sentence.

¶ 68 Affirmed.