# Illinois Official Reports

## Appellate Court

***People v. Robinson*, 2018 IL App (1st) 153319**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GLENN ROBINSON, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-15-3319 |
| Filed | May 8, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CR-18676; the Hon. Joseph Michael Claps, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | James E. Chadd, Patricia Mysza, and Jonathan Pilsner, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins, Douglas P. Harvath, and Tasha-Marie Kelly, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion.<br>Justices Pucinski and Mason concurred in the judgment and opinion. |

**OPINION**

¶ 1    Two police officers saw a masked man committing an armed robbery and tried to stop him. The man opened fire on the officers, who responded in kind and chased him for several blocks. Along the way, the man fired shots at other police officers. At the end of the chase, discarded beside a house, the police found a handgun and a mask. Nearby, defendant Glenn Robinson lay with bullet wounds. A jury convicted Robinson of several counts of attempted first degree murder.

¶ 2    Robinson argues that a state ballistics expert laid an insufficient foundation for her expert opinion linking several cartridge casings found along the masked man's route to the handgun found near Robinson. But any weakness in that testimony could have been brought out on cross-examination, and goes to the weight of the evidence, not its admissibility. Robinson also challenges his sentence as a habitual criminal, arguing that his earlier convictions for armed robbery consist of elements different than the current armed robbery statute. We reject this as overly formalistic and affirm the conviction and sentence.

¶ 3                    BACKGROUND

¶ 4    Around 3 a.m. on September 4, 2012, two police officers, Cecil Phillips and Shantell Clinton, were driving in an unmarked squad car near the corner of State Street and 75th Street, when they saw two men standing in front of an electronics store. One man, wearing a mask and a dark hooded sweatshirt, pointed a gun at the other man. Phillips and Clinton stopped, got out, announced they were police officers, and directed the armed man to drop his weapon. Instead, the man turned and fired multiple times at Phillips and Clinton. The officers took cover behind the squad car and returned fire. The armed man ran north on State Street, and Phillips ran after him. Clinton used her police radio to report the shots, and drove north in pursuit.

¶ 5    Two other officers, Tiffany Ermon and Evona Earnest, sat in a marked squad car a block further north, at 74th Street and State Street, when they heard multiple gunshots. They then saw the armed man at the corner, firing his weapon southward on State Street. He turned and fired at the squad car. Ermon fired back from behind the car; Earnest fired back from the driver's side window. The man ran east on 74th Street until Ermon lost sight of him as he passed an alley between State Street and Wabash Avenue. Ermon and Earnest followed him in their squad car; Ermon saw the man running south through the yards of houses on Wabash Avenue.

¶ 6    Phillips had followed the man north on State Street, then east on 74th Street, until he reached the alley between State Street and Wabash Avenue. He heard the man trying to jump the fences between the houses. At 7418 South Wabash Avenue, Phillips jumped a fence into a gangway between two houses. On the ground, he found a bloodied black hooded sweatshirt with holes in the front and right arm sleeve, an empty Glock semiautomatic weapon, gloves, a hat, and a mask.

¶ 7    At 7422 South Wabash Avenue, Ermon saw Phillips in the alley; she then climbed a fence into yards, crossed onto Wabash Avenue, and saw a man lying on the porch at 7422 South Wabash Avenue, surrounded by other officers who had converged there. The man (Robinson) had been shot five times in the right forearm, scrotum, and abdomen.

¶ 8 Police charged Robinson with 16 counts of attempted first degree murder. The State presented the testimony of all four officers (as well as a civilian who witnessed the initial shots fired at Phillips and Clinton). None of the officers could identify the shooter since he had been wearing a mask. There were no usable fingerprints on either the handgun or its magazine, and no useful DNA on the handgun.

¶ 9 But, Robinson could not be excluded from the DNA profiles obtained from the hat and the mask. At 7411 South State Street (between 74th and 75th Streets), police found car keys belonging to a Chevy Tahoe parked on 74th Street east of State Street. Robinson was the Tahoe's registered owner; police recovered Robinson's driver's license in the center console.

¶ 10 The shootout left several dozen cartridge casings strewn along 75th, State, and 74th Streets. The State presented firearm examiner Jennifer Hanna from the Illinois State Police, who had examined the handgun found in the alley, along with the officers' guns, and the recovered cartridge casings. Just before Hanna's scheduled testimony, Robinson's counsel objected, arguing that Hanna did not have sufficient foundation for the basis of her opinions. The trial court denied this objection, stating that counsel should have requested more discovery on Hanna's methods or filed a motion *in limine*.

¶ 11 Hanna testified that, generally, she identifies firearms based on their "class characteristics" (common to a particular type or model of handgun) versus their "individual characteristics" (imperfections unique to a particular weapon). She test-fired each of the five handguns (four from the officers, and the one found in the gangway) and compared the results to each of the cartridge casings recovered. She opined, without detail, that 15 of the casings had been fired by the gun in the gangway, 15 casings had been fired from Phillips's gun, 8 casings had been fired from Ermon's gun, 8 casings had been fired from Earnest's gun, and 2 casings had been fired from Clinton's gun. Robinson's counsel objected to each of these opinions.

¶ 12 On cross-examination, counsel asked Hanna if she used any written criteria in making these determinations, and Hanna responded that she based the comparisons on her procedures, training, and experience. When asked if her opinions turned on her subjective judgment, Hanna again stated that she based her expert opinion on training and experience. In closing argument, defense counsel argued that Hanna had not told the jury why she thought any cartridge casing belonged to any particular handgun.

¶ 13 After his conviction, Robinson argued in his posttrial motion that the trial court erred in allowing the State to present Hanna's ballistics testimony without adequate foundation. The trial court denied the motion.

¶ 14 The State petitioned to have Robinson sentenced to natural life imprisonment as a habitual criminal, based on his 1992 and 1999 convictions for armed robbery. The trial court agreed and sentenced Robinson to natural life. Robinson moved to reconsider his sentence arguing that the State had not met its burden to prove him a habitual criminal. The trial court denied this motion.

¶ 15 ANALYSIS

¶ 16 Admissibility of Ballistics Evidence

¶ 17 Robinson argues that Hanna gave insufficient foundation for her expert conclusions linking cartridge casings found at the scene to particular firearms. The parties disagree on the standard of review: Robinson contends that this is a question of law reviewed *de novo*, while

the State argues that we should review an evidentiary issue for an abuse of discretion. Compare *People v. Simmons*, 2016 IL App (1st) 131300, ¶ 114 (abuse of discretion), with *People v. Safford*, 392 Ill. App. 3d 212, 221 (2009) (*de novo*). We agree with *Simmons* that the weight of precedent indicates that this is an evidentiary question, left to the trial court's discretion. *Simmons*, 2016 IL App (1st) 131300, ¶¶ 109-113 (noting that Illinois Supreme Court uses abuse of discretion standard when reviewing whether expert testimony had sufficient foundation and criticizing *Safford*'s use of *de novo* standard).

¶ 18    Robinson does not challenge Hanna's qualifications to testify as an expert witness in the field of ballistics identification or the general admissibility of the evidence. He focuses on whether Hanna sufficiently disclosed the reasons for her conclusions so as to establish the reliability of the underlying information. See *id.* ¶ 115. Robinson relies heavily on *Safford*, where a latent fingerprint examiner testified a defendant's fingerprint matched one found near the scene of a shooting but did not testify as to how he arrived at that conclusion. 392 Ill. App. 3d at 220-21. The court held that insufficient foundation prevented defense counsel from conducting meaningful cross-examination. *Id.* at 224.

¶ 19    But *Safford* has been heavily criticized, and characterized as an "outlier." *People v. Negron*, 2012 IL App (1st) 101194, ¶ 41; see also *People v. Wilson*, 2017 IL App (1st) 143183, ¶¶ 41-42; *Simmons*, 2016 IL App (1st) 131300, ¶¶ 120-128. Indeed, we can find no published case following *Safford*'s reasoning. It is the defendant's right and burden to elicit the facts underlying an expert's opinion in cross-examination. See Ill. R. Evid. 705 (eff. Jan. 1, 2011); *Negron*, 2012 IL App (1st) 101194, ¶ 42. As the trial court pointed out, defense counsel did not object to Hanna's testimony until the morning of trial and had not complained about a lack of discovery concerning the underlying facts. Defense counsel questioned Hanna about her use of written criteria as well as subjective judgment in arriving at her conclusions. But defense counsel did not ask Hanna for details on any particular cartridge casing. Defense counsel's inability (or unwillingness) to put Hanna through her paces does not make the foundation inadequate. Rather, the lack of detail in Hanna's testimony went to its weight, not its admissibility. *Simmons*, 2016 IL App (1st) 131300, ¶ 125 (firearm expert who testified about class and individual characteristics of bullets, without specifying which individual characteristics matched particular bullets, laid sufficient foundation and inadequacies affected weight of opinion, not admissibility).

¶ 20    Nonetheless, any error would be harmless. See *People v. Goins*, 2013 IL App (1st) 113201, ¶ 72 (in assessing whether error is harmless, court should ask whether harm complained of contributed to defendant's conviction). Hanna's testimony merely established that the gun found in the gangway had fired a number of the cartridge casings found in the area, an incidental part of the State's case against Robinson. The State could not link Robinson to the gun through fingerprints or DNA. The bullets found in Robinson's body constituted the strongest evidence against him (revealing Robinson as the masked man who had engaged in a shootout with police), and that evidence had nothing to do with Hanna's ballistics evidence.

¶ 21                                    Habitual Criminal Sentencing

¶ 22    Robinson argues that he should not have been sentenced as a "habitual criminal" because he did not have the necessary qualifying convictions. The judge sentenced Robinson under section 5-4.5-95(a)(1) of the Unified Code of Corrections (730 ILCS 5/5-4.5-95(a)(1) (West 2012)) (commonly known as the Habitual Criminal Act), which states that a defendant is a

"habitual criminal" if he or she has two prior convictions for "an offense that contains the same elements as an offense now *** classified in Illinois as a Class X felony." Habitual criminals receive a term of natural life imprisonment. *Id.* § 5-4.5-95(a)(5).

¶ 23    In petitioning to have Robinson sentenced as a habitual criminal, the State used two convictions for armed robbery (from 1992 and 1996) as the qualifying convictions. Robinson argues that the elements of armed robbery in the 1990s and the elements for the current version of the offense differ and that the old convictions do not qualify.

¶ 24    In both 1992 and 1996, the definition of armed robbery involved committing a robbery while "he or she carries on or about his or her person, or is otherwise armed with a dangerous weapon." 720 ILCS 5/18-2(a) (West 1996); 720 ILCS 5/18-2(a) (West 1992). At both times, armed robbery ranked as a Class X felony. 720 ILCS 5/18-2(b) (West 1996); 720 ILCS 5/18-2(b) (West 1992).

¶ 25    By 2012, the armed robbery statute had been amended and made more detailed to comport with sentencing enhancements for using a firearm. The new version listed four possibilities that converted a robbery to an armed robbery: (i) being armed with "a dangerous weapon other than a firearm," listed as a Class X felony; (ii) being armed "with a firearm," a Class X felony with a 15-year sentence enhancement; (iii) "personally discharg[ing] a firearm" during the offense, a Class X felony with a 20-year sentence enhancement; or (iv) personally discharging a firearm during the offense causing death or great bodily harm, a Class X felony with a 25-year sentencing enhancement, up to natural life. 720 ILCS 5/18-2 (West 2012).

¶ 26    Robinson argues that these new possibilities change the elements: that the State now needs to prove that a "dangerous weapon" is not a firearm or need not prove that a firearm is "dangerous." But, Illinois courts have rejected this "formalistic" interpretation of the Habitual Criminal Act, holding instead that the elements need only be "equivalent," not identical. *People v. Fernandez*, 2014 IL App (1st) 120508, ¶ 17. Robinson cites no case (and we have found none) holding that the amendments to the armed robbery statute now exclude old armed robbery convictions from habitual-criminal sentencing. For purposes of the Habitual Criminal Act, the amendment split the old element of "dangerous weapon" into two possible categories (firearm or not-firearm) but did not change the element itself.

¶ 27    In addition, Robinson's argument seems contrary to legislative intent. Armed robbery in both the early and later versions was classified as a Class X felony. Robinson has provided us with no evidence, and we have found none, indicating that the legislature wanted to remove armed robbery from the list of possible qualifying convictions for a habitual criminal. Rather, the plain language of all the relevant statutes shows a consistent intent to treat armed robbery as a serious crime.

¶ 28    Since we have determined that the trial court did not commit error, we need not address Robinson's claim under the plain error or ineffective-assistance standards.

¶ 29    Affirmed.